**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DAVID A. LASKOWSKI,**

        **Plaintiff,**        **CIVIL ACTION NO. 09-CV-11939**

  **vs.**

                        **DISTRICT JUDGE SEAN F. COX**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 9) be DENIED, Defendant's Motion For Summary Judgment (docket no. 12) be GRANTED and the instant Complaint DISMISSED.

\*\*\*

**II.**    **PROCEDURAL HISTORY:**

      Plaintiff filed an application for Supplemental Security Income on August 6, 2003 alleging that he had been disabled since July 17, 2003 due to heart problems and a herniated disc in the lower back. (TR 65, 80). The Social Security Administration denied benefits. (TR 50-53). Administrative Law Judge Regina Sobrino (ALJ) held a hearing and issued a favorable decision dated January 17, 2006. (TR 35-41). The Appeals Council reviewed the decision sua sponte and in a decision dated March 10, 2006, vacated the ALJ's decision and remanded the case for further proceedings. (TR 30-34). The ALJ held a second hearing on August 16, 2006 and subsequently found that the claimant was not entitled to Supplemental Security Income because he was not under

a disability. (TR 26, 369). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 6-10). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A. Plaintiff's Testimony

Plaintiff has an Associates Degree in the auto technology field. (TR 374). Plaintiff testified that in 2003 he was terminated from his last job as a telemarketer for missing nine days of work over a twenty-eight month period for medical reasons. (TR 374). On his disability report Plaintiff reported that he was fired from the job because he was not meeting sales goals and he could not work full-time due to his impairment. (TR 81). Plaintiff also reported that his firing was in part due to failing to meet sales goals. (TR 81). Plaintiff lives in a two-story home with his two school-aged sons and climbs a flight of stairs to reach his bedroom. (TR 373).

Plaintiff testified that he can stand for thirty to forty-five minutes and walk for a maximum of twenty minutes, or about the length of a city block on most days. (TR 375, 388). He uses a cane if his leg really bothers him. (TR 375). Plaintiff testified that he can sit for 45 to 60 minutes and lift no more than ten pounds. (TR 375, 382). He is right handed and testified that he has some numbness and difficulty using his hands due to his carpal tunnel syndrome and he wears braces at night. (TR 375-76, 382-83). Plaintiff testified that he has difficulty reaching overhead and bending at the waist. (TR 375-76, 387). He can bend his knees, crouch and climb stairs by using the railings but tries to climb stairs as little as possible. (TR 376, 382). Plaintiff described a limited range of motion with pain in his neck and difficulty turning his head from side to side. (TR 384). Plaintiff

also described pain in his lower and mid-back. (Docket no. 385). Plaintiff testified that he was seeing a psychologist until insurance stopped covering the visits and his most recently prescribed anti-depressant, Cymbalta, seems to help. (TR 377-78).

Plaintiff testified that he treats with Dr. Awerbuch and is currently being treated with acupuncture. He testified that he gets severe migraines once in a while for which he takes medication, but the migraines have "somewhat subsided" and acupuncture has helped "quite a bit." (TR 384). He also sees a cardiologist every six months for an EKG. (TR 376). Plaintiff testified that his primary physician had suggested riding a bicycle for exercise. (TR 376). Plaintiff testified that he fell off the bicycle in July 2006 and went to the emergency room. (TR 376).

Plaintiff performs some housework with the help of his sons and he shops for groceries and other items. (TR 378). His daughter and son-in-law moved in with him and he testified that they help with the cooking, housework and dishes. (TR 378-79, 82). Plaintiff reads and watches the news. His brother comes to visit him and Plaintiff goes to visit his eighty-eight year old mother a couple of times per week. (TR 379). He does not have trouble with bathing or dressing himself, but testified that it takes him longer than most people. (TR 379). He is able to drive but does not like to drive on the highway because he has had episodes where he has started to fall asleep at the wheel. (TR 380). Plaintiff attends parent-teacher conferences at the school for his children. (TR 380). Plaintiff testified that he no longer chaperones field trips to the nature center due to the walking distances involved. (TR 381). The last field trip he attend was to a museum where he could sit indoors. (TR 381). Plaintiff sometimes cuts his lawn if he is having a good day but he has his boys pull the starter on the lawn mower. (TR 386).

B.      Medical Evidence

The record shows that Plaintiff treated with Gavin I. Awerbuch, M.D., as early as March 18, 2002. (TR 178). In March 2002 Plaintiff's complaints included continued chronic back pain, pain and stiffness in his neck, intermittent tingling and numbness in his hands and a flare up of his migraine headaches lasting several hours, with reported throbbing pain in the left temple, nausea and photosensitivity. (TR 178). On examination the doctor reported tenderness in the lower back with a reduced range of motion, pain with twisting or turning the neck and positive Tinel's sign at the wrist. (TR 178). The doctor diagnosed migraine headache, cervicalgia, chronic low back pain, a left wrist ganglion cyst and noted to rule out carpal tunnel syndrome. (TR 178). The doctor ordered wrist splints, prescribed Imitrex for the migraines and renewed prescriptions for Soma and Tylenol. (TR 178). An electromyography test of the same date revealed EMG findings indicative of mononeuropathy at the wrist (carpal tunnel syndrome). (TR 179-181).

Plaintiff continued to see Dr. Awerbuch regularly through the remainder of 2002 until July 2003. In January 2003 Plaintiff saw Dr. Awerbuch three times for continued complaints including neck pain, headaches, and numbness and tingling in the hands. (TR 165-75). On January 20, 2003 Dr. Awerbuch noted that Plaintiff has a thoracic kyphosis and may be developing "a slight scoliosis in the thoracic area as well." (TR 169). The doctor noted that the migraine headaches were improved and that Plaintiff had "excellent results" from his trigger point needling. (TR 169). At the end of January Plaintiff reported that his back pain was still present but the medication was working and trigger point therapy was helping. (TR 165). Plaintiff reported a flare-up of his back pain resulting from taking his children tobogganing over the weekend. (TR 165). A January 27, 2003 EMG showed findings indicative of mild bilateral carpal tunnel syndrome. (TR 166).

Plaintiff underwent an M-Mode and 2-D Echocardiogram in April 2003 following complaints of chest pain and shortness of breath. (TR 189). The test revealed concentric left

ventricular hypertrophy and Doppler examination revealed Grade II mitral insufficiency. (TR 189). Systolic left ventricular functioning was satisfactory, there was no segmental wall motion abnormality, mitral and aortic valves appeared normal, and there was no pericardial effusion. (TR 189). On July 21, 2003 Plaintiff saw K. Mohan, M.D., for a history of angina pectoris and a recent hospitalization following an episode of chest pain. (TR 182). An EKG revealed "sinus rhythm with nonspecific ST segment changes" and the doctor noted that Plaintiff continued to smoke and was advised to stop smoking. (TR 182).

In September 2003 Plaintiff reported to the emergency room with fever and chills and reported a headache which had lasted the past twelve weeks. (TR 199-201). A CT of the head with intravenous contrast was normal, as was an MRI of the brain. (TR 197, 202). The MRI revealed "mucosal thickening in the maxillary antra and ethmoid sinuses compatible with chronic sinusitis" and a retention cyst or polyp appeared to be present in the left maxillary antrum. (TR 197).

Plaintiff underwent physical therapy from August through September 2003 to address neck and lumbar and thoracic pain. (TR 203-218). State agency consultant Larry G. Thompson, M.D., completed a Physical Residual Functional Capacity Assessment dated November 21, 2003 and concluded that Plaintiff has the residual functional capacity to lift and/or carry ten pounds occasionally and frequently, stand and/or walk at least two hours in an eight-hour workday, sit about six hours in an eight-hour workday, must periodically alternate sitting and standing to relieve pain or discomfort, and is limited in the upper extremities and may not perform repetitive production line work. (TR 142). Dr. Thompson also found that Plaintiff may only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl and may never climb ladders, ropes or scaffolds, he is limited to performing constant reaching, fingering and feeling and only occasional handling and should avoid concentrated exposure to vibration. (TR 143-45).

The record shows that Plaintiff began treating with Dr. Awerbuch again in July 2005. (TR 252-249, 257-65). X-rays dated July 29, 2005 including a scoliosis survey and views of the dorsal spine revealed "[s]ome generalized demineralization of the bones with mild wedging of the mid-thoracic vertebral segments causing increased kyphosis" and "a very mild curvature of the lower thoracic spine to the left and the upper lumbar spine to the right." (TR 219).

Dr. Awerbuch wrote a letter dated November 29, 2005 in which he identified Plaintiff's diagnoses as chronic cervical, thoracic and lumbar back pain, degenerative disc disease, spondylosis, vertebral wedging, kyphoscoliosis and bony demineralization, chronic migraine headaches and bilateral carpal tunnel syndrome with clinical symptoms including chronic pain, weakness, muscle spasms and loss of function of the hands and upper extremities. (TR 224). An MRI of Plaintiff's lumbar spine on April 4, 2006 revealed "no significant change from the study of 2002" and "[d]isc bulge with a central focal disc herniation at L5-S1." (TR 237). X-rays of the same date revealed degenerative disc disease at L4-5 and "mostly at L5-S1." (TR 238). Plaintiff underwent an EMG on July 17, 2006 which revealed bilateral carpal tunnel syndrom with findings correlating to Plaintiff's clinical symptoms. (TR 236).

On August 21, 2006 Plaintiff underwent diagnostic and therapeutic facet injections at T5-T6, T6-T7 and T7-T8. (TR 243). Dr. Awerbuch noted that afterward, range of motion was performed with 50-60% pain relief. (TR 244). During this period of time, Plaintiff was also took Tylenol 3 as needed for pain. (TR 228, 246, 248). The record also contains Dr. Awerbuch's treatment records post dating the ALJ's decision, as discussed below.

In September 2002 Plaintiff's treatment provider noted that Plaintiff requested a counseling referral because he was "going through a divorce and having a hard time." (TR 193). In November 2002 Plaintiff was evaluated by Delores A. Dinsmore, M.S.W., C.S.W., for complaints of major

6

stress. The social worker diagnosed Plaintiff with acute stress disorder (308.3), depression disorder NOS (311) with a note to rule out bi-polar disorder and anti-social personality disorder and assigned a GAF of 55-60. (TR 150-61). Plaintiff was discharged on June 24, 2003 with the stated reason "[l]ack of consumer contact. He wasn't seen in over 30 days." (TR 221). Plaintiff had attended nine sessions and was noted to have made some slight progress. (TR 221).

Dr. Mary Jo Voelpel, medical expert, testified at the August 16, 2006 hearing. Dr. Voelpel identified the impairment of carpal tunnel syndrome and noted that from the evidence, she could not state whether there would be restrictions other than an obvious restriction in repetitive motions. (TR 397). Dr. Voelpel also reported scoliosis, but noted that there were "no x-rays or EMG's that indicate restrictions in . . . (sic) pain or the need for surgical intervention and the January 2003 EMG on the lower extremities was normal." (TR 396). Dr. Voelpel also testified that the record showed "minor problems with bronchitis and sinusitis that do not meet any respiratory listings" and migraine cephalalgia. (TR 398). The doctor noted that the anxiety episodes fall under category 12.06, but there was no record and she was not qualified to comment on restrictions regarding any psychiatric issues. (TR 398).

Dr. Voelpel testified that due to the underlying scoliosis, Plaintiff would need education and retraining in safe lifting, handling and moving, but not necessarily pound restrictions "other than what would be limited based on deconditioning and lack of muscular strength." (TR 398). She testified that the carpal tunnel impairment would suggest restrictions of fine dexterity and repetitive manipulation. (TR 398). Asymmetry of the musculo-skeletal system would require repositioning and stretching from time to time, approximately every hour. (TR 399). The doctor testified that due to Plaintiff's current medication list, including Hydrocodone, and having taken morphine in the past, working around heavy machinery may be hazardous. (TR 399). Dr. Voelpel noted that in 2003 the

physician did not indicate restrictions in fine dexterity, which were not commented upon until 2006.

### C. Vocational Expert

The ALJ asked the VE to consider an individual with an Associates Degree, born in 1959, "who is limited to lifting, carrying, pushing and pulling five pounds frequently and [ten] pounds occasionally," can stand and walk two hours of an eight-hour workday, sit for eight hours of an eight-hour workday, needs to alternate between sitting and standing approximately every hour for a few minutes and should not climb ladders, ropes or scaffolds and may only occasionally climb stairs with railings, rarely (less than occasionally) stoop, may occasionally crouch, cannot perform forceful gripping, grasping, pinching, twisting or squeezing, is limited to occasional handling and feeling with no overhead reaching to perform the job, and no more than occasional flexing, extending or rotating the neck, cannot be exposed to hazards or vibration and should not perform production line work. (TR 402). The individual should not perform work that requires twisting or turning the back and is limited to simple, routine work. (TR 402).

The VE testified that Plaintiff's past work as a telemarketer was semi-skilled and that the limitation to simple, routine work would preclude such an individual from performing the telemarketer job. (TR 403). The VE testified that the other limitations would not preclude performance of the telemarketer job. (TR 404). The VE testified that other jobs exist that could be performed by such an individual including a reduced range of the following jobs in the region defined as the lower peninsula of the state of Michigan: Reception and information clerk positions (reduced to about 2,100 jobs), interviewer positions (1,000 jobs), visual inspecting positions (1,500) and surveillance system positions (750 jobs). (TR 405). The VE testified that an individual using a cane to walk could still perform these jobs and that the individual could miss a maximum of two work days per month. (TR 405). The VE testified that the jobs do not involve more than occasional

fingering.  (TR 407).  The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles (DOT).  (TR 406).

## IV.  ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 6, 2003 and suffers from scoliosis, degenerative disc disease, carpal tunnel syndrome and depression, he does not have an impairment or combination of impairments that meets or equals the Listing of Impairments.  (TR 22-23).  The ALJ found that Plaintiff's allegations regarding the extent of his symptoms were not totally credible and although Plaintiff could not perform his past work, he has the ability to perform a limited range of sedentary exertion work and there are jobs that exist in significant numbers in the economy which Plaintiff can perform. (TR 25-26).  Therefore he was not suffering from a disability under the Social Security Act.  (TR 26).

## V.  LAW AND ANALYSIS

### A.  Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts

in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.      Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)      he was not presently engaged in substantial gainful employment; and

(2)      he suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)      he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. § 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See id.* at § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d

at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the ALJ did not properly evaluate his treating physician's opinion, the ALJ's credibility determination is not supported by substantial evidence and the hypothetical question to the VE did not accurately describe Plaintiff's impairments and limitations.  (Docket no. 9).  The Court notes that Plaintiff did not raise an argument related to the ALJ's findings with respect to Plaintiff's mental impairments.  Therefore, the analysis herein focuses on the ALJ's findings related to Plaintiff's physical impairments.

### C.    Analysis

### 1.    *Whether The ALJ Properly Considered The Treating Physician's Opinion*

Plaintiff argues that the ALJ failed to properly evaluate Dr. Awerbuch's November 2005 opinion that Plaintiff "is disabled from any form of gainful employment on a regular and sustained basis even at the sedentary level."  (TR 224).  It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference.  Under 20 C.F.R. § 416.927(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.  The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters*, 127 F.3d at 529-30.  Dispositive administrative findings relating to

the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. § 416.927(e). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Comm'r of Soc. Sec.*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. § 416.927(e)(1).

In a letter dated November 29, 2005, Dr. Awerbuch included a narrative of Plaintiff's exertional and non-exertional limitations and opined that Plaintiff "is disabled from any form of gainful employment on a regular and sustained basis even at the sedentary level" and that Plaintiff "has days where he cannot work." (TR 224). The doctor "estimate[s] that he would be unable to work" and that "the above limitations would disrupt a regular job schedule with low physical demands of (sic) at least two hours a day, ten hours per week, and 40 hours per month." (TR 224). The ALJ did not err in failing to adopt Dr. Awerbuch's conclusion that Plaintiff is "disabled." The ALJ is required, however, to give the reasons for the weight she assigned to the treating physician's opinion. *See* 20 C.F.R. § 416.927(d)(2). The ALJ acknowledged that Dr. Awerbuch is a treating physician and cited to the doctor's treatment notes from 2002 through 2006. (TR 22-24).

Dr. Awerbuch in his opinion listed Plaintiff's underlying diagnoses and resulting limitations. He does not, however, explain why the limitations would disrupt Plaintiff's workday or week if the limitations were addressed by the RFC, as they were, and the jobs were consistent with the limitations. The ALJ found that Plaintiff has the RFC to perform work that includes lifting, carrying pushing and pulling five pounds frequently and ten pounds occasionally, standing and/or walking two hours of an eight-hour day and sitting up to eight hours of an eight-hour day, the ability to

alternate position for a few minutes every sixty minutes with further non-exertional limitations including a limitation to job offering simple, routine work[1]. (TR 24).

The ALJ's RFC is predominately consistent with Dr. Awerbuch's November 2005 limitations, including Dr. Awerbuch's opinion that Plaintiff needs to avoid repetitive bending, lifting and twisting at the waist level, avoid pushing, pulling, torqueing or work above shoulder level (the ALJ found that Plaintiff should not work overhead, consistent with Plaintiff's testimony), the need for a sit/stand option (the ALJ allowed for a need to alternate position) and the need to avoid repetitive or forceful grasping of power tools (the ALJ found that Plaintiff should not perform forceful grasping or gripping and should not be exposed to vibrations). (TR 24, 224, 375).

The ALJ pointed out where the severity of the doctor's 2005 opinion was not supported by medically acceptable clinical and laboratory diagnostic techniques and was not consistent with the record as a whole. 20 C.F.R. § 416.927(d)(2). Dr. Awerbuch concluded that Plaintiff has more restrictive exertional limitations than those found by the ALJ. Dr. Awerbuch opined that "[b]ecause of his hand limitation," Plaintiff "should limit weight to (sic) less than five pounds occasionally." (TR 224). The ALJ concluded that Plaintiff could lift five pounds frequently and ten pounds occasionally. (TR 24). The ALJ explained his failure to adopt the doctor's more restrictive weight limitation. As the ALJ pointed out, the doctor's conclusion is not well-supported by the record where electromyographic studies showed Plaintiff's carpal tunnel syndrome to be "mild"[2] and, as

---

[1]Sedentary work is defined as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

[2]In the same November 2005 opinion Dr. Awerbuch also concluded that Plaintiff "should avoid lifting weight of more than ten pounds occasionally above shoulder level or below waist

13

discussed in further detail below, Plaintiff's activities of daily living "remain fairly full." (TR 25). The exertional finding of sedentary work is consistent with both Plaintiff's testimony that he can lift ten pounds and the state agency physician's record review and determination that Plaintiff can lift, carry, push and/or pull ten pounds frequently and occasionally. (TR 142, 375). The Court also notes that, as Defendant pointed out, at a November 4, 2005 hearing, Plaintiff testified that Dr. Awerbuch had suggested that Plaintiff try to obtain a paper route. (TR 366).

The ALJ's exertional finding is well explained, including to the extent that the ALJ decided not to adopt Dr. Awerbuch's opinion that Plaintiff cannot lift more than five pounds occasionally. (TR 224). The ALJ gave good reasons for her decision not to give controlling weight to Dr. Awerbuch's opinions regarding Plaintiff's inability to perform a full workday and more restrictive limitations. 20 C.F.R. § 416.927(d)(2). The ALJ's findings with respect to both the weight given to the opinions of record and the RFC are supported by substantial evidence.

### 2. *Whether the ALJ's Credibility Determination is Supported By Substantial Evidence*

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence. Plaintiff argues that the ALJ made only a conclusory statement to support her credibility determination where the ALJ stated that "[t]he medical evidence documents the existence of impairments that can reasonably be expected to produce symptoms such as pain and depression. However, the medical and other evidence of record does not fully substantiate allegations of disabling symptoms." (Docket no. 9 at 23, TR 24). Plaintiff in his brief did not develop his credibility argument or identify which of Plaintiff's symptoms or statements is inconsistent with the

---

level" which is not inconsistent with the ALJ's limitation to lifting no more than ten pounds occasionally at any height. (TR 24, 224).

ALJ's RFC determination. Contrary to Plaintiff's argument, the ALJ fully explained her credibility determination with respect to Plaintiff symptoms as required by the Regulations. *See* 20 C.F.R. § 416.929; *see also* SSR 96-4p and 96-7p.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence. *See id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.*

Furthermore, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). In addition to objective medical evidence, the ALJ must consider all the evidence of record in making his credibility determination. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

The ALJ pointed out where objective medical evidence showed mild degrees of impairment or was negative or normal, for example a scoliosis survey and x-rays of the dorsal spine showed only

mild conditions. (TR 22, 219-20). In making his credibility determination, the ALJ pointed out the effectiveness of Plaintiff's medical treatment and medication and its fairly conservative nature. (TR 22-23, 25). In 2006 Plaintiff's headaches were described as being helped by medication. (TR 225). Plaintiff testified that acupuncture also relieved the headaches. (TR 384). Physical therapy from August through September 2003 resulted in an improved cervical and thoracic range of motion, improved thoracic strength, improved functional levels from twenty to seventy-five percent and a decrease in complaints of pain throughout the spinal region. (TR 22, 206, 208).

The ALJ pointed out that Plaintiff testified that he does not currently engage in strengthening exercises. (TR 23, 394). In January and February 2006 Plaintiff had immediate 50-60% pain relief from facet joint injections at L4-5 and L5-S1. (TR 22, 229-30, 232). Plaintiff reported that his anti-depressant medication is helpful. (TR 377). The ALJ also noted Plaintiff's relatively mild treatment for carpal tunnel syndrome where surgery had been discussed but not undertaken. The ALJ properly distinguished Plaintiff's scoliosis by noting Dr. Awerbuch's opinion that the scoliosis is progressive with no surgical options. (TR 22).

The ALJ also considered Plaintiff's daily activities and described them as remaining "fairly full." (TR 25). The ALJ pointed out that Plaintiff lives in a two story house, he is able to drive, he visits family, goes out to eat, is active in his children's lives and involved in family activities, performs some yard and housework with assistance from his children and attends parent/teacher conferences. (TR 23). Plaintiff reported that he drives his children to school, prepares meals for them two to three times a week and helps them with their homework. (TR 94-95, 100). Plaintiff testified that he no longer attends his children's field trips which require a fair amount of walking, but he was able to attend a museum field trip which allowed for sitting. (TR 381). Plaintiff rode

a bicycle, at his physician's suggestion, until he took a fall. (TR 23, 96, 376). Plaintiff reported that he is able to shop for one to three hours per week. (TR 96).

The ALJ's findings with respect to Plaintiff's credibility are based on substantial evidence in the record. The ALJ properly considered Plaintiff's credibility and thoroughly explained her determination, which is supported by substantial evidence in the record.

**3.**      ***Whether the ALJ's Step Five Determination Is Supported By Substantial Evidence***

Plaintiff argues that because the ALJ's hypothetical question to the VE did "not accurately describe [Plaintiff] in all significant, relevant respects, the VE's testimony at the hearing should not constitute substantial evidence" and that the "ALJ failed to ask a proper hypothetical at the time of trial." (Docket no. 9). Plaintiff did not provide further explanation about which limitations the ALJ failed to include in the hypothetical question to the VE.

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Serv.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ found that Plaintiff has the RFC to perform a limited range of sedentary work. As set forth above, the ALJ provided reasons for her credibility determination and the weight accorded to Dr. Awerbuch's opinion. The ALJ's RFC is supported by substantial evidence and the limitations of the RFC were provided to the VE in the hypothetical question. The VE testified to a number of jobs available to an individual with the limitations set forth in the hypothetical question and RFC. (TR 402). The ALJ's decision at step five that there are a substantial number of jobs in economy which Plaintiff can perform is supported by substantial evidence.

"Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."

*See Casey*, 987 F.2d at 1233 (citing *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108

(6th Cir.1989)).  "It is the rare case, the exception, in which every piece of evidence points

incontrovertibly towards the holding."  *Phillips v. Sec'y of Health & Human Servs.*, 812 F.2d 1407

at *2 (6th Cir. 1987).  The ALJ's decision was supported by substantial evidence in the record and

her findings were articulated in her decision.

**4.      Whether The Matter Should Be Remanded For Consideration Of Evidence That Was Not Before The ALJ**

The record contains Dr. Awerbuch's and other treatment records post-dating the ALJ's

decision and through 2008[3].  Despite Plaintiff's statement in his brief that "[s]ubsequent office visits

were submitted in conjunction with the appeal to the Appeals Council after the August 2006 denial,"

and identifying the time period for the additional evidence, Plaintiff has not requested a remand for

consideration of this new evidence and has not briefed the issue.

In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial

review is limited to the evidence that was part of the record before the ALJ.  *Cotton v. Sullivan*, 2

F.3d 692 (6th Cir. 1993); *Casey v. Sec'y*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Sec'y*, 974

F.2d 680, 685 (6th Cir. 1992).  Furthermore, under 20 C.F.R. § 404.970(b), "[i]f new and material

evidence is submitted, the Appeals Council shall consider the additional evidence only where it

relates to the period on or before the date of the administrative law judge hearing decision."

---

[3]The record contains nearly two years of information post-dating the ALJ's August 22, 2006 decision, in part, because on January 27, 2009 the Appeals Council set aside a September 15, 2008 action denying Plaintiff's request for review of the ALJ's August 22, 2006 decision. (TR 291).  The Council also vacated an August 20, 2008 Order of Remand which was issued when the claim file could not be located.  The claim file was since located and in the January 27, 2009 Order, the Appeals Council provided Plaintiff an opportunity to submit further evidence that is "new *and* material to the issues considered in the hearing decision dated August 22, 2006."  (TR 291). On March 19, 2009 the Appeals Council denied Plaintiff's request for review. (TR 6-9).

The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt*, 974 F.2d at 685 (*citing Richardson*, 402 U.S. at 401). The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (*citing Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)). "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711 (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton*, 2 F.3d at 696 ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material.")(emphasis added)(citations omitted). "Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt*, 974 F.2d at 685 (*citing Sizemore*, 865 F.2d at 712).

Plaintiff did not request a remand of this case pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of the additional records and has not shown good cause for his failure to provide

any of this additional evidence to the ALJ prior to the hearing or decision. He has not identified records which are new and/or material. Nevertheless, the Court considered the records to determine whether a sentence six remand is appropriate. (TR 234-66, 291-323). A review of the all of the evidence shows that it falls into one or more of four categories. First, much of the evidence in duplicative of the material that was before the ALJ. For example, records from Dr. Awerbuch show that Plaintiff underwent bilateral facet injections again on July 31 2007, August 7, 2007 and August 14, 2007 at L3-L4, L4-L5 and L5-S1. (TR 257). Each time, range of motion was performed with 50-60% pain relief. (TR 257-59). These records show the same relief from facet injection which was attained during the January and February 2006 injections, which was evidence before the ALJ. (TR 229-30, 232).

Second, some of the records show evidence of subsequent deterioration. For example Dr. Awerbuch's October 18, 2006 notes referred to continuing treatment of Plaintiff's conditions which were identified prior to the ALJ's hearing and Dr. Awerbuch discussed chronic pain management with Plaintiff and his intent to put Plaintiff on a long-acting opioid. The doctor renewed Plaintiff's Cymbalta prescription and added Lamictal. (TR 242). The doctor noted Plaintiff's report that he is having more trouble with household activities and noted reduced motion resulting from thoracic kyphoscoliosis. (TR 242). The evidence shows subsequent deterioration.

Third, many of these documents do not show that they relate to the "period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.1470(b). Finally, the records are not material. For example, Plaintiff underwent a sleep study, a polysomnography, on September 18, 2006. (TR 234-35). Plaintiff was diagnosed with obstructive sleep apnea, sleep disruptions and poor sleep architecture. (TR 235). Plaintiff's sleep efficiency was 85.1% and sleep maintenance efficiency was 88.2%. (TR 234). The record contains Plaintiff's handwritten note that

this study was ordered in January 2006, showing that the study may relate to the relevant period of time, however, Plaintiff has not shown, and it is not evident from the record, that there is a reasonable probability that the ALJ would have reached a different disposition of Plaintiff's claim if she had this evidence. (TR 235). For these reasons, the Court should not remand this case for consideration of the additional records which post-date the ALJ's August 22, 2006 decision.

## VI.    CONCLUSION

The ALJ's decision was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Plaintiff's Motion for Summary Judgment (docket no. 9) should be DENIED, Defendant's Motion for Summary Judgment (docket no. 12) should be GRANTED and the instant Complaint DISMISSED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 28, 2010          s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

**<u>PROOF OF SERVICE</u>**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 28, 2010          s/ Lisa C. Bartlett
                              Case Manager